UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN DOE,

                Plaintiff,

  - against -

STATE UNIVERSITY OF NEW YORK AT STONY
BROOK, MATTY A. ORLICH, and KATHRYN N.
SANTIAGO,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
19-CV-6039 (RRM) (RLM)

ROSLYNN R. MAUSKOPF, United States District Judge.

      John Doe brings this action against the State University of New York at Stony Brook ("SUNY"), as well as Director of the Office of Community Standards Matty A. Orlich and Title IX Investigator Kathryn N. Santiago in their individual capacities, alleging, among other things, violations of Title IX of the Educational Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 *et seq.*, Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. §2000d *et seq.*, and the Constitution, stemming from a disciplinary action for alleged sexual misconduct. Defendants now move to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Notice of Mot. (Doc. No. 25).) For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

      The following facts are taken from the Amended Complaint and are assumed to be true for the purpose of this memorandum and order.

      On or about April 14, 2016, Doe, an African-American man, was walking with his roommate ("Roommate"), a white man, through SUNY's campus on the way to their dormitory when a female student approached them. (Am. Compl. (Doc. No. 20) ¶¶ 13–15.) The female

student, whom Doe did not know, stated that she liked Doe and would like to accompany him to his dorm room. (*Id.* ¶ 15.) Doe agreed and the three of them returned together to Doe and Roommate's shared dorm room. (*Id.* ¶ 16.) Once in the dorm room, the female student engaged in sexual contact with both Doe and Roommate. (*Id.* ¶ 17.) She did not object to the sexual contact, but consented to it and participated willingly. (*Id.* ¶ 18.) At no point during this sexual encounter did Doe penetrate her anus with his finger (or in any other manner). (*Id.* ¶ 19.) Immediately following a sexual encounter with Doe, the female student went to the bathroom with Roommate and, when she returned to the room, engaged in consensual oral sex with Roommate. (*Id.* ¶ 20.) Witnesses who saw her leaving Doe's dorm room reported that she did not appear distraught or upset in any way. (*Id.* ¶ 21.)

On or about April 18, 2016, SUNY accused Doe of violating seven sections of SUNY's code of conduct in connection with allegedly sexually assaulting the female student during the encounter in Doe's dorm room, based on her allegations that the sexual acts that occurred that night were non-consensual. (*Id.* ¶¶ 22, 24.) The seven alleged violations were as follows: "a) Section III.A.1.a—Offense against Person (threatening, intimidating, bullying or abusive acts); b) Section III.A.1.d—Interference (prevented person from leaving room); c) Section III.A.1.f—Discrimination; d) Section III.A.9.a—Disruption of University Activities; e) Section VII.C.5.a—Sexual Harassment (kissing); f) Section VII.C.5.b—Sexual Harassment (vaginal intercourse); g) Section VII.C.5.c—Sexual Harassment (oral sex)." (*Id.* ¶ 23.) Roommate was also accused of sexual assault by the female student. (*Id.* ¶ 25.)

Based on these allegations, Defendants sent Doe an email outlining his rights as a student accused of sexual assault (as set forth in SUNY's code of conduct) and banned Doe from SUNY's campus. (*Id.* ¶ 26.) During this time, Doe was still taking classes and preparing for

final exams, but once he was suspended, Doe was unable to continue attending classes or to take his final exams. (*Id*. ¶¶ 27–28.) Doe withdrew from all of his classes for the spring 2016 semester. (*Id*. ¶ 29.)

Doe and his attorney met with university officials, including Kathryn Santiago, to make a voluntary statement. (*Id*. ¶ 30.) At that time, Santiago served both as Title IX Investigator and Deputy Title IX Coordinator. (*Id*. ¶ 34.) It was SUNY's custom or practice to allow Santiago to serve in both roles. (*Id*. ¶ 35.) In his statement, Doe stated that all sexual contact that he and the female student engaged in was consensual. (*Id*. ¶ 31.) Doe also told Santiago that after he and the female student had engaged in sexual conduct, Roommate and the female student had engaged in consensual sexual conduct. (*Id*. ¶ 32.) In her report of Doe's statement, "Santiago erroneously stated that [Doe] reported that he 'poked [her] butt hole with his finger (jokingly) and said "is this the right hole" and she laughed' while she performed oral sex on him." (*Id*. ¶ 35.) The female student did not accuse Doe of having poked her anus with his finger. (*Id*. ¶ 36.)

On or about July 6, 2016, Doe received formal charges, with a hearing date scheduled for August 19, 2019. (*Id*. ¶ 37.) The hearing was held before a panel of administrators who had the authority to make the final determination on the matter. (*Id*. ¶ 38.) Doe and his counsel were present, as well as the female student and her advisor. (*Id*.) Neither Doe's attorney nor Roommate's attorney were permitted to participate in the hearing. (*Id*. ¶ 39.) Doe was permitted to submit a list of questions for the female student. (*Id*. ¶ 40.) The panel asked some of these questions and reviewed some of the evidence. (*Id*.) Both Doe and Roommate invoked the Fifth Amendment and refused to answer any questions. (*Id*. ¶ 41.) The issue of whether Doe had poked the female student's anus was not addressed during the hearing. (*Id*. ¶ 42.)

3

On or about September 2, 2016, Orlich executed a letter informing Doe that he had been found responsible for just one violation of the code of conduct. A subsequent written decision, however, found Doe responsible for three code of conduct violations: "a) Section VII.C.5.a—Sexual Harassment: Kissing, Vaginal Intercourse, Oral Sex, Anal Sex; b) Section VII.C.5.b—Non-Consensual Sexual Contact: Kissing, Vaginal Intercourse, Oral Sex, Anal Sex; c) Section VII.C.5.c—Non-Consensual Sexual Intercourse and/or Penetration: Vaginal Intercourse, Oral Sex, Anal Sex." (*Id*. ¶¶ 43, 45.) As alleged, the findings of responsibility were premised solely upon Doe's statement that he "poked [her] butt hole with his finger," even though the female student never testified that Doe poked her anus or inserted his finger or anything else into her anus. (*Id*. ¶¶ 46–47.) Even though the female student had testified that Roommate engaged in anal sex with her, Roommate was found "not responsible" for any sexual assault or code of conduct violation. (*Id*. ¶¶ 48–49.) Doe timely appealed the decision to SUNY's internal Appeals Board, which denied his appeal on or about January 13, 2017. (*Id*. ¶ 53.)

On or about May 8, 2017, Doe filed an Article 78 action against Defendants in the Supreme Court of the State of New York, alleging that Defendants' decision should be overturned because it was not supported by substantial evidence. (*Id*. ¶ 59.) On or about March 27, 2019, the New York Supreme Court, Appellate Division, Second Department, annulled the determination and vacated Doe's suspension. (*Id*. ¶ 60.) In that decision (the "Article 78 Decision"), the Appellate Division held that the determination "was not supported by substantial evidence," "was based on no evidence," and was "comprised of nothing more than surmise, conjecture or speculation." (*Id*. ¶ 61.) As a result of the Article 78 Decision, the record of the alleged sexual assault will no longer appear on his transcript. (*Id*. ¶ 62.)

4

Prior to the misconduct allegations, Doe had been on track to graduate in the spring of 2017. (*Id.* ¶ 50.) However, Doe was suspended through the spring of 2017, totaling three semesters when he was unable to complete coursework because of the allegations against him. (*Id.* ¶ 51.) He was also unable to register at another college or university while the proceedings were in progress. (*Id.* ¶ 52.) His suspension for sexual harassment and non-consensual sexual contact was noted on his transcript and was part of his permanent school record. (*Id.* ¶ 54.) Doe had already paid tuition for the spring 2016 semester and, by the time he withdrew, it was non-refundable. (*Id.* ¶ 57.) He also lost financial aid due to his suspension. (*Id.* ¶ 58.)

Doe brings six causes of action in his Amended Complaint. First, Doe alleges that SUNY unlawfully discriminated against Doe based on his sex in violation of Title IX by suspending him for three semesters in an intentionally discriminatory manner because he was male, on the basis of a "patently false claim that wholly favored the female accuser's version of events and damages [Doe]." (*Id.* ¶¶ 64–72.) Second, Doe alleges that SUNY unlawfully discriminated against him based on his race in violation of Title VI by penalizing him, an African-American man, for alleged anal contact but giving preferential treatment to his Roommate and the female student, who actually engaged in anal sex and are both white. (*Id.* ¶¶ 73–83.) Doe therefore asserts that his race was "an intentional and motivating factor for Defendant's decision to prosecute the proceeding and sanction Plaintiff." (Am. Comp. ¶ 80.) Doe brings his third cause of action against all Defendants pursuant to 42 U.S.C. § 1981, alleging that all Defendants discriminated against him based on his race and in violation of his civil rights. (*Id.* ¶¶ 84–95.) Specifically, Doe states that Santiago's dual role as Title IX Investigator and Deputy Title IX Coordinator created a conflict of interest, and "to the extent that Ms. Orlich signed off on Ms. Santiago's investigation and findings, she did so without adequate oversight,"

thereby denying Doe his contractual rights and benefits under SUNY's University Student Conduct Code. (*Id*.) Doe's fourth and fifth causes of action are brought against all Defendants pursuant to 42 U.S.C. § 1983, alleging that Doe endured both procedural and substantive due process violations when he was suspended from campus and subjected to a "wholly arbitrary" process with Santiago, who "could not be an independent investigator," at the helm. (*Id*. ¶¶ 96–112.) In his sixth cause of action, also brought pursuant to § 1983, Doe alleges that Defendants committed an equal protection violation when they "unilaterally accused" him, because of his race, of non-consensual contact with the female student's anus while simultaneously electing not to penalize Roommate, who is white, for anal sex with the female student. (*Id*. ¶¶ 113–21.)

The Instant Motion

Defendants now move to dismiss the Amended Complaint. Defendants assert that Doe's §§ 1981 and 1983 claims against SUNY should be dismissed for lack of subject matter jurisdiction because neither statute provides a waiver of sovereign immunity as required under the Eleventh Amendment. (Defs.' Mem. (Doc. No. 25-1) at 24.) Moreover, because § 1983 is the exclusive damages remedy for claims brought against state actors, Defendants argue that Doe's § 1981 action must be dismissed against Orlich and Santiago. (*Id*. at 25.)

Defendants further contend that Doe has failed to allege personal involvement of Orlich or Santiago under § 1983, (*id*. at 25–26), and that Doe's § 1983 procedural due process claim fails because he has failed to allege procedural deficiencies in his disciplinary hearing. (*Id*. at 19–22.) Defendants state that even if Doe had managed to state a claim under § 1983 for procedural due process or equal protection violations, Santiago and Orlich are entitled to qualified immunity because the law regarding potential conflicts of interest is not clearly established. (*Id*. at 27–30.)

6

Defendants argue that Doe's Title IX claim should be dismissed for failure to plausibly allege that the outcome of his disciplinary hearing was motivated by his gender. (*Id.* at 12–16.) Doe's conclusory allegation that the outcome of the disciplinary proceeding was motivated by gender bias is insufficient to support a Title IX violation. (*Id*. at 13–16.) Finally, Defendants argue that Doe's Title VI claim and his equal protection and substantive due process allegations under § 1983 should be dismissed for failure to allege that Defendants intentionally discriminated against Doe on the basis of race. (*Id*. at 16–17.) Defendants append to their motion a document Doe filed in his Article 78 action ("Exhibit 1") (Doc. No. 25-3) which purports to show that Doe did tell investigators that he had poked the female student's anus with his finger and made a joke, to dispute Doe's apparent allegation that Defendants "manufactured" the statement upon which the disciplinary determination was based. (*Id*. at 17–19.)

In his reply motion, Doe for the first time argues that SUNY was subject to significant public pressure relating to their handling of women's claims of sexual harassment and misconduct, and that this public pressure, combined with Santiago's dual role as Title IX Investigator and Deputy Title IX Coordinator, provide sufficient basis to conclude that the outcome of Doe's disciplinary proceedings was the result of gender bias in violation of Title IX. (Pl.'s Mem. (Doc. No. 26) at 10-17.) Doe also argues that Defendants are estopped from arguing that the disciplinary hearing was proper due to the doctrine of *res judicata*. (*Id*. at 8.) Further, Doe asserts that the "sine qua non of [Doe's] Title VI, § 1981, and Equal Protection claim for racial discrimination under the Fourteenth Amendment's protection is that similarly situated students outside of the protection of these statutes were treated differently." (*Id*. at 17.) Doe asserts that because Doe's white roommate was not found responsible for sexual assault, but Doe was, Doe has sufficiently alleged racial discrimination. (*Id*. at 18–21.) Doe argues, "Violating

7

impartiality parameters and pitting herself against [Doe] as the Accuser's surrogate, Santiago did what the Accuser herself failed to do–get her pound of flesh. Of course, it came from the Black guy." (*Id*. at 21.) Doe also asserts that Santiago's use of Doe's statement that he had poked the female student's anus – a statement Doe argues was "misused" to "remov[e] the Accuser's consent from the context" – was motivated by bad faith sufficient to support a procedural due process claim under § 1983. (*Id*. at 21–23.) Confusingly, Doe also argues that Defendants falsified evidence when they relied on this statement, even though Doe also admits that, as demonstrated in Exhibit 1, Defendants "did not make up the sexual act, they just ignored its most prescient element, which is key to nearly all Title IX determinations concerning sexual allegations: that it was consensual." (*Id*. at 26, 24.) Finally, Doe argues that Orlich and Santiago are not entitled to qualified immunity for either Santiago's dual roles or for acting to sanction Doe for clearly consensual sexual activity that was not included in the female student's complaint. (*Id*. at 27–28.) To support this last contention, Doe cites the "unofficial 2020 Title IX Regulations," promulgated on May 6, 2020, which, though not in effect when Doe's disciplinary hearing took place, are "persuasive authority of the failings of the investigations and adjudications used by Defendants." (*Id*. at 29.)

In response, Defendants argue that because Doe failed to address whether the §§ 1981 and 1983 claims against SUNY are barred by sovereign immunity, Doe has abandoned these claims. (Defs.' Reply (Doc. 27) at 14.) Defendants assert that Doe has failed to allege a procedural or substantive due process violation, or personal involvement on behalf of Orlich or Santiago, and so the § 1983 claims must be dismissed. (*Id*. at 9–14.) Further, Defendants argue that Doe has failed to plausibly allege that the outcome of his disciplinary proceedings was motivated by his gender, and that the new arguments raised in his reply brief should not be

8

considered by this Court. (*Id*. at 6–8.) Finally, Defendants state that Doe has failed to plausibly allege that the outcome of the proceeding was based on race, because by Doe's own admission he had admitted to sexual conduct in his voluntary statement that Roommate had not admitted to. (*Id*. at 8–9.)

## DISCUSSION

### I. Rule 12(b)(1) Motion

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted). A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars suits in federal court for relief against a State by a private citizen absent the State's consent or a valid Congressional abrogation of immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Sections 1981 and 1983 provide no such abrogation for suits against the State. *Id*. at 68–69 ("We find nothing substantial in the legislative history that leads us to believe that Congress intended that the word 'person' in § 1983 included the States of the Union."); *Wang v. Office of Prof'l Med. Conduct*, 354 F. App'x 459 (2d Cir. 2009) (finding sovereign immunity barred § 1981 claims against the states). New York's sovereign immunity extends to the State University of New York system. *See Dube v.*

*State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), *cert. denied sub nom. Wharton v. Dube*, 501 U.S. 1211 (1991)). Doe's §§ 1981 and 1983 claims against SUNY must therefore be dismissed.

## II.     Rule 12(b)(6) Motion

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged, and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In all cases a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570). When ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider the "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as matters of which judicial notice may be taken." *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir. 1993).

### a.  § 1981 Claim

In instances where there is an alleged violation of § 1981 by a "state actor," § 1983 provides the "exclusive federal damages remedy." *Whaley v. City U. of New York*, 555 F. Supp. 2d 381, 400 (S.D.N.Y. 2008) (*citing Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)). "Moreover, the holding in *Jett* has been interpreted to encompass not only governmental entities

10

but also individuals sued in their individual capacities who are 'state actors.'" *Roddini v. City Univ. of N.Y.*, 02-CV-4640 (LAP), 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003). "State employment has generally been deemed sufficient to render the defendant a 'state actor.'" *Id*. at *5. Orlich and Santiago, as employees of SUNY and therefore state actors, must be sued under § 1983, not § 1981. Accordingly, Doe's § 1981 claim against Orlich and Santiago is dismissed.

### b.  § 1983 Claims

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show … the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  In other words, "because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each … defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  For supervisory defendants, personal involvement may be shown where:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F. 3d at 139.

Doe repeatedly asserts in his Amended Complaint that Orlich sent a letter to Doe informing him that he had been found responsible for sexual misconduct, and, "[t]o the extent that Ms. Orlich 'signed off' on Ms. Santiago's investigation and findings, she did so without adequate oversight, pursuant to SUNY's custom or practice, which was particularly damaging given the conflict of interest and potential for error if not abuse."  (Am. Compl. ¶¶ 85, 97, 105.)

11

These allegations do not satisfy any of the five prongs enumerated above.  Though Doe asserts that if Orlich had signed off on Santiago's investigation or findings she would have done so as part of a custom or practice of inadequate oversight, Doe does not actually allege that Orlich signed off on Santiago's investigation or findings.  Mere speculation as to whether Orlich signed off on Santiago's report is not sufficient to establish Orlich's personal involvement in an alleged constitutional violation.  Further, Doe does not state any facts to plausibly show that Orlich was grossly negligent or had participated directly in a constitutional violation when she sent him a letter informing him of the results of his disciplinary hearing.  Doe's § 1983 claims against Orlich are therefore dismissed for failure to allege personal involvement.

Doe's allegations against Santiago are even less clear.  Doe asserts that Santiago's dual role as Title IX Investigator and Deputy Title IX Coordinator created a conflict of interest, but fails to explain what that conflict of interest was or how it actually shaped the disciplinary proceedings or the outcome, arguing only that Santiago's dual role introduced "potential for error if not abuse."  Moreover, though Doe states that "Defendants proffered evidence" against him that was "comprised of surmise, speculation, and conjecture," he does not identify what that speculative evidence was, how this evidence constitutes a Constitutional violation, or what Santiago specifically did in furtherance of that violation.  Doe cites to the Article 78 Decision to show that Doe's disciplinary determination was based on "no evidence" and "comprised of nothing more than surmise, conjecture or speculation," but it does not follow that the evidence that Santiago provided in her report was conjectural.

Though Doe appears to assert in his Amended Complaint that Santiago fabricated evidence by "erroneously" including a statement he allegedly made where he admitted to poking the female student's anus with his finger, Doe seems to disclaim this assertion in his subsequent

12

briefing. In his discussion of whether to consider Defendants' Exhibit 1, he does not in fact allege that Santiago fabricated that statement when she included it in her report. Rather, Doe argues that Santiago's report "misused" his statement by "removing consent from the context," and this misconstrued statement was the basis of the panel's determination that he had committed code of conduct violations. (Pl.'s Mem. at 21–23.) Doe fails to explain in his Amended Complaint and subsequent briefing how Santiago misused or misconstrued his statement by including it, apparently in full, in her report. Further, if, as he seems to argue, the statement was misconstrued during the disciplinary proceedings, Doe fails to explain how this manipulation of his statement is attributable to Santiago.

None of these allegations – that Santiago served in two roles simultaneously, that she included a statement in her report that may have been taken out of context, and that the disciplinary outcome was conjectural and based on a lack of evidence – explain how Santiago was personally involved in any alleged constitutional violation. Doe's § 1983 claims against Santiago are therefore dismissed for failure to allege personal involvement.

    c. **Title IX Claim**

Title IX provides, in relevant part, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A plaintiff asserting a Title IX erroneous disciplinary outcome claim must demonstrate (1) "articulable doubt [as to] the accuracy of the outcome of the disciplinary proceeding," and (2) that "gender bias was a motivating factor behind the erroneous finding." *Doe v. Colgate University*, 760 Fed. App'x 22, 30 (2d Cir. 2019). In the context of an erroneous outcome claim, allegations that a disciplinary process favored a female accuser "do not

13

necessarily relate to bias on account of sex." *Doe v. Columbia*, 831 F.3d 46, 57 (2d Cir. 2016). Additionally, "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss …. A plaintiff must thus also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

      Here, it is undisputed that Doe has pled sufficient facts to raise an articulable doubt regarding the accuracy of his disciplinary outcome. Doe has already prevailed in his Article 78 action, which annulled the disciplinary determination and vacated his suspension based on a lack of evidence. However, Doe fails to allege sufficient facts to raise an inference of gender bias as a motivating factor behind the disciplinary decision. Doe's Amended Complaint contains the conclusory allegation that Doe, a male student, was disadvantaged in the disciplinary proceedings because he was male, but is otherwise devoid of facts that would tend to support this claim. Because Doe's Title IX claim rests solely on a conclusory allegation of gender bias or sex discrimination, it cannot survive a motion to dismiss.

      In his response brief to Defendants' motion to dismiss, Doe asserts for the first time that SUNY was facing campus unrest and government scrutiny regarding sexual assault on campus and was under significant public pressure to appear sympathetic to female accusers. These assertions were not contained in the Amended Complaint and so the Court cannot consider them. *Rodriguez v. Holder*, 11-CV-2124, 2014 WL 6983401 at *3 (E.D.N.Y. Dec. 10, 2014) ("The Court cannot consider allegations that a petitioner raises for the first time in [his] brief opposing a motion to dismiss."); *see also, e.g., K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F.

14

Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiff[] cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.").

### d. Title VI Claim

Title VI provides, in relevant part, that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A plaintiff asserting a claim pursuant to Title VI must plausibly allege "that the defendant discriminated against him on the basis of race, that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal citations and quotation marks omitted).

Doe asserts in his Amended Complaint that Roommate, who is white, was the only person accused of non-consensual anal contact with the female student, but that it was Doe, who is black, who was punished for this contact. Doe also asserts that the female student, who is also white, received preferential treatment during the disciplinary proceedings. Doe therefore asserts that his race was "an intentional and motivating factor for Defendant's decision to prosecute the proceeding and sanction Plaintiff." (Am. Comp. ¶ 80.) In his response brief, Doe further asserts that he faced racial discrimination when "Defendants unilaterally invented an accusation of a non-consensual sexual act that the accuser herself never alleged – at least not against Plaintiff," (Resp. at 8.); that because he is black he is "particularly vulnerable to false accusations," (*id*. at 20); and that Santiago, by "[v]iolating impartiality parameters and pitting herself against Plaintiff as the Accuser's surrogate, … did what the Accuser herself failed to do–get her pound of flesh. Of course, it came from the Black guy," (*id*. at 21.)

15

These inflammatory and conclusory allegations are not sufficient to establish intentional discrimination. Doe alleges no facts to support his assertion that Defendants sought to punish him because he is black, besides the facts that he is black and that the other two students are not. Further, though Doe appears to argue that he took the blame for Roommate when he was found responsible for code of conduct violations stemming from allegedly non-consensual anal contact, Doe also gave a statement to Santiago in which he admitted to anal contact. Though Doe argues that this statement was taken out of context and used against him, Doe alleges no facts in his Amended Complaint to support his argument that this statement was taken out of context or used against him because of his race. Accordingly, Doe's Title VI claim must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2021

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge